**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| Kitsi Sterling,<br><br>Plaintiff,<br><br>v.<br><br>Rock Springs, LLC, and Lifepoint Behavioral Health Services, LLC.,<br><br>Defendants. | Civil Action No. 1:26-cv-03104<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Kitsi Sterling files this Original Complaint against Defendants Rock Springs, LLC, and Lifepoint Behavioral Health Services, LLC, and alleges as follows.

## I. NATURE OF THE ACTION

1. Kitsi Sterling worked at Rock Springs, a behavioral health hospital in Georgetown, Texas, for approximately ten years. She was never disciplined during that time.

2. In May 2026, Ms. Sterling signed a written report stating that Rock Springs was billing government health care programs for inpatient care it was not providing, and that it was holding patients in conditions that put them at risk. The facility's Patient Advocate submitted the report to Rock Springs' corporate office. Ms. Sterling had raised the same concerns with her supervisors.

3. On July 1, 2026, less than two months after Ms. Sterling signed the report, Rock Springs terminated her employment.

4. Ms. Sterling brings this action under the anti-retaliation provision of the federal False Claims Act, 31 U.S.C. § 3730(h); the anti-retaliation provision of the Texas Health Care

Program Fraud Prevention Act, Tex. Hum. Res. Code § 36.115; and Tex. Health & Safety Code § 161.134, which prohibits a hospital, mental health facility, or treatment facility from terminating an employee for reporting a violation of law.

5. Ms. Sterling is not required to prove that Defendants violated the substantive provisions of the statutes she invoked. Each of the three anti-retaliation provisions protects an employee who reports in good faith. Ms. Sterling reported in good faith.

6. Ms. Sterling seeks reinstatement or front pay in lieu of reinstatement, two times her back pay, interest on the back pay, actual damages including mental anguish, exemplary damages, litigation costs, and reasonable attorney's fees.

## II. PARTIES

7. Plaintiff Kitsi Sterling is an individual residing in Bell County, Texas.

8. Defendant Rock Springs, LLC is a Delaware corporation, headquartered in Brentwood, Tennessee, which owns and operates Rock Springs behavioral health hospital at 700 Southeast Inner Loop, Georgetown, Williamson County, Texas 78626. It may be served through its registered agent, CT Corporation System at 1999 Bryan St. Suite 900, Dallas, TX, 75201.

9. Defendant Lifepoint Behavioral Health Services, LLC ("Lifepoint") is a Delaware corporation, headquartered in Brentwood, Tennessee, which does business in Texas. It may be served through its registered agent, CT Corporation System at 1999 Bryan St. Suite 900, Dallas, TX, 75201

10. Defendants are referred to collectively as "Rock Springs" except where a distinction among them is relevant.

## III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Count One under 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

12. This Court has supplemental jurisdiction over Counts Two and Three under 28 U.S.C. § 1367(a). Both arise from the same termination and the same operative facts as Count One and form part of the same case or controversy.

13. This Court has personal jurisdiction over each Defendant. Rock Springs, LLC operates a hospital in Texas. On information and belief, LifePoint directs and controls that hospital's operations and transacts business in Texas. The claims pleaded here arise from each Defendant's contacts with Texas.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred here, and under 31 U.S.C. § 3732(a), because Defendants transact business here. Williamson County is also a county in which Ms. Sterling was employed by Defendants and in which Defendants conduct business.

15. Venue is proper in the Austin Division. Ms. Sterling worked at the Georgetown facility, engaged in the protected activity there, and was terminated there. Georgetown is in Williamson County, which is in the Austin Division.

16. Each claim is timely. Rock Springs terminated Ms. Sterling on July 1, 2026. Section 3730(h)(3) permits suit within three years of the retaliation. Tex. Hum. Res. Code § 36.115(c) permits suit within three years of the date the cause of action accrues. Tex. Health & Safety Code § 161.134(h) requires suit before the 180th day after the date the violation occurred or was discovered through reasonable diligence, and this suit is filed within that period.

## IV. FACTUAL ALLEGATIONS

### A. Ms. Sterling's employment at Rock Springs

17. Ms. Sterling began working at the Rock Springs facility in Georgetown, Texas in approximately 2016. She worked there until her termination on July 1, 2026.

18. Her most recent position was care coordinator. She worked directly with patients and prospective patients, coordinated admissions and intake, communicated with families and referral sources, and helped manage patients' movement through the facility.

19. Rock Springs never disciplined Ms. Sterling. She received no written warning, no performance improvement plan, and no corrective action of any kind during her ten years at the facility.

### B. The Rock Springs facility

20. Rock Springs is a licensed inpatient psychiatric hospital. It provides crisis stabilization, inpatient psychiatric care, and treatment for substance use disorders, including alcohol detoxification.

21. Rock Springs is a hospital within the meaning of Tex. Health & Safety Code § 161.131(3) and § 241.003.

22. Rock Springs is a mental health facility within the meaning of Tex. Health & Safety Code § 161.131(7) and § 571.003(12)(A), because it is an inpatient mental health facility operated by a person. It is also a private mental hospital within the meaning of § 571.003(20).

23. Rock Springs is a treatment facility within the meaning of Tex. Health & Safety Code § 161.131(10) and § 464.001(5), because it is a private hospital under § 464.001(5)(A), a detoxification facility under § 464.001(5)(B), and a facility that offers treatment under § 464.001(5)(L).

24. Rock Springs, LLC operates the facility. To the extent LifePoint also operated or controlled the facility, each is likewise a hospital, mental health facility, or treatment facility for purposes of Tex. Health & Safety Code § 161.134(a).

**C. The change in management and the pressure to raise the census**

25. In or about October 2025, Selma Ward became Chief Executive Officer of Rock Springs.

26. Ms. Sterling observed a change in the facility's operations after Ms. Ward took control. Ms. Ward directed staff to fill beds and meet quota.

27. Rock Springs is a licensed inpatient psychiatric hospital with a finite number of licensed beds. On information and belief, its revenue from government health care programs depends substantially on the number of patient days it bills.

28. On information and belief, Rock Springs billed Medicare, Texas Medicaid, including Medicaid managed care, and TRICARE for inpatient behavioral health services on a per diem or per discharge basis during the relevant period.

**D. The practices Ms. Sterling observed**

29. Ms. Sterling came to believe that Rock Springs was submitting claims to government health care programs for inpatient care it was not providing, and that the same practices were endangering patients. Two practices were central to that belief.

30. The first was boarding patients without beds. When Rock Springs wanted to increase the number of patients for whom it could bill government payors but had no available licensed bed, it kept patients in the facility without assigning them a bed. Those patients were held in hallways, dayrooms, and other common areas rather than referred to a facility with capacity to treat them.

31. Texas law entitles a patient receiving mental health services to appropriate treatment in the least restrictive appropriate setting available, and to a humane treatment environment that provides reasonable protection from harm and appropriate privacy for personal needs. Tex. Health & Safety Code § 576.021(a)(1), (a)(5). Those rights may not be waived by the patient or by any person acting on the patient's behalf. § 576.021(c).

32. Patients held in hallways, dayrooms, and other common areas were not in a staffed, licensed inpatient bed. They had no privacy for personal needs. Ms. Sterling believed that holding patients in those conditions denied them the treatment environment Texas law requires.

33. A private psychiatric hospital must hold a license before it admits patients, and the license authorizes operation of the designed bed capacity identified in it. *See* 26 Tex. Admin. Code §§ 510.21, 510.26. Ms. Sterling believed that Rock Springs was carrying a census above the bed capacity its license authorized and its staffing could support.

34. Additionally, patients held in that manner did not receive the inpatient level of care that an occupied licensed bed represents. Ms. Sterling understood that Rock Springs billed government health care programs for those patients as though it were providing adequate inpatient services.

35. Holding psychiatric and detoxification patients in hallways and common areas, outside the staffed and supervised bed capacity for which the facility is licensed, exposed those patients to risks the licensed bed structure exists to prevent.

36. The second practice was retaining patients past medical necessity. When a patient no longer required the services Rock Springs provided and should have been discharged, Rock Springs kept that patient on service so it could continue to bill government payors for additional patient days.

37. A voluntary patient is entitled to leave an inpatient mental health facility on written request. Tex. Health & Safety Code § 572.004(a). If a patient informs an employee of the facility of the patient's desire to leave, the employee must, as soon as possible, assist the patient in creating the written request and present it to the patient for signature. Id. The facility must notify the treating physician within four hours, and the physician must discharge the patient before the end of that four-hour period unless the physician has reasonable cause to believe the patient meets the criteria for court-ordered mental health services or emergency detention. Id. § 572.004(b), (c).

38. Patients who no longer required inpatient care told Rock Springs staff that they wished to leave. Rock Springs did not assist those patients in creating written requests for discharge, did not notify the treating physician within four hours, and did not discharge them. Rock Springs instead kept those patients on service so that it could continue to bill for additional patient days. Ms. Sterling reported that practice

39. Documentation was entered in those patients' records reflecting a continuing medical necessity that, to Ms. Sterling's knowledge, did not exist.

40. Documentation of a medical necessity that does not exist corrupts the clinical record on which later treatment decisions depend. Ms. Sterling believed that the practice endangered patients as well as defrauded the programs that paid for their care.

41. Staff who questioned these practices were told they would be terminated.

42. Ms. Sterling believed that claims submitted to Medicare, Texas Medicaid, and TRICARE for patient days generated by these practices were false, that the practices were fraud against the government, and that they violated the rules governing the facility's license. A reasonable employee in her position, with her ten years of experience at the facility, would have held the same belief.

43. Billing a government health care program for inpatient care not actually rendered, and creating records falsely documenting medical necessity to support that billing, violate 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) and Tex. Hum. Res. Code § 36.002(1), (2), (4)(B), and (7)(B).

44. Ms. Sterling's reports concerned conduct affecting the Texas Medicaid program, including Medicaid-funded behavioral health services administered through the local mental health authorities serving the facility's service area.

**E. Ms. Sterling's protected activity**

45. Ms. Sterling made repeated efforts to stop the practices described above. She raised them with her supervisors on more than one occasion.

46. In May 2026, Ms. Sterling drafted a written report describing the practices she had observed and stating her opposition to them.

47. Ms. Sterling signed the report. She did not submit it anonymously. Her name appeared on its face.

48. Ms. Sterling submitted the reports and engaged in additional related protected activity in May 2026, less than 60 days before her July 1 termination.

49. Ms. Sterling gave the signed report to Robyn Williams, the facility's Patient Advocate, who submitted it to Rock Springs' corporate office. Rock Springs established the patient advocate function as a channel for reporting patient care and compliance concerns.

50. Ms. Sterling reported to her supervisors, which Tex. Health & Safety Code § 161.134(a) identifies as a proper recipient of a report. She also reported to administrators of the facility, which § 161.134(a) separately identifies as a proper recipient, by submitting her signed written report through the Patient Advocate to Rock Springs' corporate office. Rock Springs

established the patient advocate function as the channel through which employees were to raise patient care and compliance concerns

51. Ms. Sterling reported to her supervisors and to administrators of the facility. Her reports described conduct she believed violated the False Claims Act, the Texas Health Care Program Fraud Prevention Act, and the rules governing the facility's license and its treatment of patients.

52. Ms. Sterling made her reports in good faith.

53. Ms. Sterling's conduct was protected by 31 U.S.C. § 3730(h)(1), by Tex. Hum. Res. Code § 36.115(a), and by Tex. Health & Safety Code § 161.134(a).

**F. Rock Springs' knowledge of the protected activity**

54. Rock Springs received the report. The facility's own Patient Advocate submitted it to Rock Springs' corporate office through the reporting channel Rock Springs maintained.

55. Ms. Sterling signed the report, so Rock Springs knew the report was hers.

56. On information and belief, Selma Ward and other members of Rock Springs management with authority over Ms. Sterling's employment learned of the report and learned that Ms. Sterling had made it.

57. On information and belief, no employee other than Ms. Sterling put a signed written complaint of this kind before Rock Springs management during the relevant period.

**G. The termination**

58. Rock Springs terminated Ms. Sterling's employment on July 1, 2026.

59. Less than 60 days separated Ms. Sterling's protected activity from her termination.

**H. Rock Springs' stated reason is false**

60. Rock Springs attributed the termination to a "walk-out" incident that occurred in or about June 2026, approximately one month before it terminated Ms. Sterling.

61. The "walk-out" incident involved a man coming to the facility seeking alcohol detoxification services. He waited, became impatient, and decided to leave before he was admitted.

62. Selma Ward blamed Ms. Sterling for failing to lock the man in the lobby to prevent him from leaving, and identified that failure as the reason for Ms. Sterling's termination.

63. The man was given a breath test. The test did not show intoxication. There was no clinical basis to treat him as a danger to himself or to others.

64. The man had not been admitted. He was a prospective patient and was free to leave.

65. Before the incident, Ms. Sterling had confirmed with law enforcement that she was not permitted to prevent a prospective patient from leaving the facility, and that confining such a person would constitute false imprisonment.

66. A person may be detained at a mental health facility on an emergency basis only if a physician has first conducted a preliminary examination and made a written statement finding that the person has a mental illness, that the person evidences a substantial risk of serious harm that is imminent unless the person is immediately restrained, and that emergency detention is the least restrictive means by which the necessary restraint may be accomplished. Tex. Health & Safety Code § 573.022(a).

67. No physician examined the man. No written statement of the kind required by § 573.022(a) existed. The man had not been admitted to the facility.

68. Rock Springs' stated reason for terminating Ms. Sterling is that she declined to confine a person in circumstances in which Texas law did not authorize his confinement

69. Rock Springs faulted Ms. Sterling for declining to detain a member of the public who had come to it for help and who was free to go.

70. The man's intake paperwork was removed from the location where the facility ordinarily keeps such records in order to conceal the event.

71. Staff were warned that anyone who went looking for the paperwork would be terminated.

72. Rock Springs' stated reason for the termination is a pretext. Rock Springs terminated Ms. Sterling because of her protected activity.

73. Rock Springs would not have terminated Ms. Sterling but for her protected activity. Her protected activity was both a but-for cause of the termination and a motivating factor in it.

74. On information and belief, multiple current and former Rock Springs employees will testify to the practices described above, to Ms. Sterling's record and reputation at the facility, and to the circumstances of her termination.

**I. Defendants jointly employed Ms. Sterling**

75. On information and belief, LifePoint exercised sufficient control over the terms and conditions of employment at the Georgetown facility to be liable as Ms. Sterling's joint or single employer.

76. On information and belief, and subject to confirmation in discovery, Defendants shared common management; promulgated and enforced the admissions, census, documentation, compliance, and human resources policies applied to Ms. Sterling; maintained a centralized human resources and compliance function to which the Georgetown facility reported; administered payroll and benefits for facility employees; and participated in or ratified the decision to terminate her.

### J. Damages

77. Ms. Sterling lost compensation which lost compensation continues to accrue.

78. Ms. Sterling has diligently sought comparable employment and will account for any interim earnings.

79. Reinstatement is not feasible given the circumstances of the termination and the management that remains in place at the facility. Ms. Sterling is entitled to front pay in lieu of reinstatement.

80. Ms. Sterling is a single mother and the sole source of support for her two children. She worked at the same facility for a decade, took pride in her work, and had an unblemished record. The termination, and the accusation Rock Springs used to justify it, caused her severe emotional distress, mental anguish, humiliation, and injury to her professional reputation.

81. Ms. Sterling has incurred and will continue to incur attorney's fees and costs of litigation in prosecuting this action.

## V. CAUSES OF ACTION

### COUNT ONE

### Retaliation in Violation of the False Claims Act, 31 U.S.C. § 3730(h)

### (Against All Defendants)

82. Ms. Sterling incorporates all paragraphs as though fully set forth here.

83. The False Claims Act, 31 U.S.C. Section 3730(h)(1), entitles an employee to all relief necessary to make her whole where she is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."

84. A plaintiff must allege that she engaged in protected activity, that her employer knew of the protected activity, and that she was retaliated against because of it.

85. Ms. Sterling engaged in protected activity. Her signed May 2026 report, and her other complaints to her supervisors, were efforts to stop conduct she reasonably and in good faith believed to be the submission of false claims to Medicare, Texas Medicaid, and TRICARE.

86. Ms. Sterling is not required to establish that Rock Springs violated the False Claims Act. Her actions were aimed at matters that reasonably could lead to a viable claim under the Act, and she held a good faith and objectively reasonable belief that her employer was committing fraud against the government.

87. Defendants knew of the protected activity. The report was signed, was delivered through the facility's Patient Advocate, and was submitted to Rock Springs' corporate office.

88. Defendants terminated Ms. Sterling's employment on July 1, 2026, fewer than 60 days after the protected activity, because of that activity. The reason Defendants gave is pretextual.

89. Ms. Sterling has suffered lost wages and benefits, lost future earnings, emotional distress, mental anguish, humiliation, and injury to her reputation as a direct and proximate result of Defendants' conduct.

90. Section 3730(h)(2) entitles Ms. Sterling to reinstatement with the same seniority status she would have had but for the discrimination, or front pay in lieu of reinstatement; two times the amount of her back pay; interest on the back pay; compensation for special damages sustained as a result of the discrimination; and litigation costs and reasonable attorney's fees. The doubling of back pay is mandatory.

## COUNT TWO

**Retaliation in Violation of the Texas Health Care Program Fraud Prevention Act,**

**Tex. Hum. Res. Code § 36.115**

**(Against All Defendants)**

91. Ms. Sterling incorporates all paragraphs as though fully set forth here.

92. Texas Human Resources Code Section 36.115(a) protects a person who is discharged because of a lawful act taken in furtherance of an action under Subchapter C of Chapter 36, or because of "other efforts taken by the person to stop one or more violations of Section 36.002."

93. The conduct Ms. Sterling reported would constitute unlawful acts under Tex. Hum. Res. Code § 36.002(1), (2), (4)(B), and (7)(B). It involved false statements and misrepresentations of material fact permitting payments under the Texas Medicaid program that were not authorized or were greater than authorized; the concealment of information permitting those payments; false statements concerning information required to be provided under state law and the provider agreement; and claims for services substantially inadequate or inappropriate when compared to generally recognized standards within the discipline.

94. Ms. Sterling's May 2026 report and her complaints to her supervisors were efforts taken by her to stop one or more violations of § 36.002.

95. Defendants discharged Ms. Sterling because of those efforts.

96. Section 36.115(a) entitles Ms. Sterling to reinstatement with the same seniority status she would have had but for the discrimination, and to not less than two times the amount of her back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees.

97. Section 36.115(a)(2) sets two times back pay as a floor and permits a greater award.

**COUNT THREE**

**Retaliation in Violation of Tex. Health & Safety Code § 161.134**

**(Against All Defendants)**

98. Ms. Sterling incorporates all paragraphs as though fully set forth here.

99. Texas Health & Safety Code Section 161.134(a) provides that a hospital, mental health facility, or treatment facility "may not suspend or terminate the employment of or discipline or otherwise discriminate against an employee for reporting to the employee's supervisor, an administrator of the facility, a state regulatory agency, or a law enforcement agency a violation of law, including a violation of this chapter, a rule adopted under this chapter, or a rule of another agency."

100. Rock Springs is a hospital, a mental health facility, and a treatment facility within the meaning of § 161.134(a), as alleged above.

101. Ms. Sterling was an employee of Rock Springs.

102. Ms. Sterling reported violations of law within the meaning of Tex. Health & Safety Code § 161.134(a). The conduct she reported included, and was not limited to: submitting claims to government health care programs for inpatient care that Rock Springs did not provide, in violation of 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) and Tex. Hum. Res. Code § 36.002; entering documentation of medical necessity that did not exist, in violation of the same provisions and of the record-keeping requirements governing the facility's license; holding patients outside the facility's licensed bed capacity and in conditions that denied them the least restrictive appropriate setting and the humane treatment environment guaranteed by Tex. Health & Safety Code § 576.021(a)(1) and (a)(5); operating a census above the designed bed capacity its license authorized,

contrary to 26 Tex. Admin. Code §§ 510.21 and 510.26; and failing to discharge patients entitled to leave under Tex. Health & Safety Code § 572.004.

103. In the alternative, and to the extent Tex. Health & Safety Code § 161.134(a) requires only a report made in good faith, Ms. Sterling reported in good faith conduct that she reasonably believed to violate each of the provisions identified above.

104. Ms. Sterling made those reports to her supervisors and to administrators of the facility, each of which § 161.134(a) identifies as a proper recipient.

105. Rock Springs terminated Ms. Sterling's employment because she made those reports.

106. Rock Springs terminated Ms. Sterling before the 60th day after the date on which she made her reports in good faith. Section 161.134(f) therefore creates a rebuttable presumption that Rock Springs terminated her for making the report.

107. Section 161.134(c) entitles Ms. Sterling to recover actual damages, including damages for mental anguish even if an injury other than mental anguish is not shown.

108. Section 161.134(d) entitles Ms. Sterling to recover exemplary damages and reasonable attorney fees.

109. Section 161.134(e) entitles Ms. Sterling to reinstatement in her former position, compensation for lost wages, and reinstatement of lost fringe benefits and seniority rights.

110. Section 161.134(b) entitles Ms. Sterling to sue for injunctive relief, damages, or both.

111. Section 161.134(i) provides that the section does not abrogate any other right to sue or interfere with any other cause of action. Ms. Sterling therefore pleads this Count alongside Counts One and Two.

112. Ms. Sterling pleads Counts One, Two, and Three in the alternative as to overlapping categories of damages and does not seek a duplicative recovery. She seeks the greater of the recoveries available under the three statutes, together with any category of relief available under one statute and not the others.

## V. JURY DEMAND

113. Ms. Sterling demands a trial by jury on all claims and issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kitsi Sterling respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, and award:

a. Reinstatement with the same seniority status Ms. Sterling would have had but for the discrimination, together with reinstatement of lost fringe benefits and seniority rights, or, because reinstatement is not feasible, front pay in lieu of reinstatement;

b. Two times the amount of her back pay under 31 U.S.C. § 3730(h)(2), and not less than two times the amount of her back pay under Tex. Hum. Res. Code § 36.115(a)(2);

c. Compensation for lost wages under Tex. Health & Safety Code § 161.134(e)(2);

d. Interest on the back pay;

e. Actual damages, including damages for mental anguish, under Tex. Health & Safety Code § 161.134(c);

f. Compensation for all special damages sustained as a result of the discrimination, including damages for emotional distress, mental anguish, humiliation, and injury to reputation;

g. Exemplary damages under Tex. Health & Safety Code § 161.134(d);

h. Litigation costs and reasonable attorney's fees;

i. Prejudgment and post-judgment interest at the maximum rates allowed by law;

j. Costs of court; and

k. All other relief, at law or in equity, to which Ms. Sterling is justly entitled.

Date: November 5, 2026

Respectfully submitted,

CORY FEIN LAW FIRM

/s/ Cory S. Fein
Cory S. Fein
Texas Bar No. 06879450
13105 Northwest Freeway, Suite 705
Houston, Texas 77040
Telephone: (713) 730-5001
Facsimile: (530) 748-0601
cory@coryfeinlaw.com

**ATTORNEY FOR PLAINTIFF KITSI STERLING**